LPA and Daniel A. Thompson. Mr. Bill. Good afternoon, Your Honor. May it please the court. Heather Davis filed her complaint in the Ohio State Court. As the master of her complaint, or the mistress of her complaint, she had the right to choose the forum in which she would initiate her case. And she had a right to remain in that forum unless and until federal jurisdiction was invoked. Ms. Davis' well-pleaded complaint that was filed in the Ohio State Court, did not invoke federal jurisdiction, nor did the amended complaint which Ms. Davis filed approximately five months into the litigation. For that reason, the district court was without jurisdiction. Well, counsel, if you weren't alleging the malpractice related to the PCT applications, and this was simply a matter of the malpractice related to the U.S. patent application, would you be arguing that there is no federal court jurisdiction over this case? Your Honor, the district court identified, I believe, three theories that she believed were the substance of the plaintiff's complaint. No, but if you were alleging malpractice related solely to the prosecution and or filing of the U.S. patent application, that's the only claim that was at issue in this case, would you be arguing to us that federal court jurisdiction were improper in that case? Likely not, but that isn't what happened here. The complaint alleged errors and omissions well outside and in addition to the errors with respect to the drafting of the U.S. utility patent applications, notably the failure to file the PCT applications on time, which is a claim that has no arising under patent laws of the United States, and particularly the claim that regards the... But counsel, we get cases all the time that involve an issue of federal patent law and an issue of state unfair competition locked on. The presence of the issue of federal patent law ends up giving us federal jurisdiction over the entire case. Why doesn't the issue related to the U.S. patent prosecution do the same in this instance? Because the Supreme Court in Christensen, I believe, said that it didn't. What the Supreme Court said in Christensen is that if you have a single claim for relief, which is what we have here, one claim for relief for legal malpractice, and if there are multiple theories supporting that claim, if there is a theory that does not arise under federal patent law, there is no federal jurisdiction. And that's what we have here. Suppose that you and I engage in a fight, and I hit you and I kick you, and you have damages from both. That's a single act of assault, same nucleus of operative facts, and even though you may have two different damages, one from the hit, one from the kick, you'd argue that's all a single theory, a single act, and not two separate claims, right? It is one claim for relief with one theory. Now suppose I hit you on one occasion, and then ten days later, in a completely separate act, I kick you. Is that two separate claims now? You're charging me with battery. Is it two separate claims or one claim? It's probably two separate claims with one theory. That's not what we're dealing with here, where we have one claim for relief supported by multiple theories, one of which clearly does not arise under U.S. patent law. But one claim with multiple theories I find a little bit confusing, because you have a single claim for the damages that would arise from her failure to be able to secure a U.S. patent due to the negligence that you allege. And those are separate and completely discrete damages from those you would seek from her failure to secure or failure to file a PCT application, because maybe we would decide that she would not have gotten a PCT anyway, there are no damages associated. Totally separate, right? You have damages from failure to secure foreign rights, which are completely separate from damages from failure to secure U.S. rights. You agree with me so far? But I also agree those aren't the only two claims. But yes, I'm with you so far. Okay, so the failure as I understand it with regard to the U.S. patent prosecution is not limited to a single act of filing over a weekend when he went on vacation and didn't file. The way it is for the PCTs, is that correct? The act of negligence is a continuing act of poor behavior during prosecution. There are multiple theories. Multiple theories or multiple instances in which he acted inappropriately with regard to his duty to her? There is one claim for legal malpractice. There may have been many discrete acts that resulted in that one claim for legal malpractice, but there is one and only one claim for relief for legal malpractice arising under a high law. So suppose that I hire you to represent me and you act grossly negligently on two separate occasions with regard to me. The first occasion, you're representing me in a contract dispute and you are grossly negligent in your representation of me. You just totally dropped the ball. And I don't realize that necessarily at the time. And then later you're representing me in a completely unrelated tort action or some other action has no bearing whatsoever on the first, completely separate by time, separate in legal theory, separate in every way. Again, you act grossly negligent towards me. I file against you a legal malpractice claim. There's actually only one name I'm going to put on top of that, legal malpractice, but you have multiple instances, each one giving rise to individual damages, each one operating under an entirely separate nucleus of facts. Why aren't those multiple claims? Because I would say under Ohio law, a well-pleaded complaint could choose whether to denominate those as one claim or as two claims. So the only difference here is if she had said claim one legal malpractice for this and claim two legal malpractice for this? She didn't. But if she had, you say that would be the difference? It could be a difference, yes. If she had denominated a claim for relief that clearly arises under federal patent law, then removal to federal court may have been appropriate, but that's not what happened here. Let me ask you another question, and then we really need to move on from this jurisdictional issue, if, in fact, jurisdiction belongs here, and that is that assuming and looking at Christensen again and recognizing that this is not a simple question, Christensen always uses the word, also uses the word plausible, that if the transfer of jurisdiction is plausible, that perhaps jurisdiction should be retained. So if jurisdiction were plausible in the district court, does that then, because of, if it might be plausible for reasons in addition to the possible presence of account relating to the handling of either United States or PCT applications, I still also have been thinking about where the appeal from the district court would go. Are you raising that question separately, or if, in fact, the transfer from the state court to the district court were tolerable, that it's properly appealed here? I think that is the conclusion we reach, is that this is the place for the appeal to be, and that's why we're here. And I understand the court's question. But that presupposes the arising under the patent statute premise, which I think sort of underlies the questions that Judge Moore was raising. I think this court is allowed to revisit de novo the question of whether the district court had jurisdiction, and that's what we're asking this court to do, is to conduct that de novo review. Can we move on to the merits, or are you willing? No, I'm perfectly willing. Go ahead. Okay. The court did err in granting the motion for summary judgment that was filed by the defendants. Again, we're asking the court to conduct de novo review. And, again, the question here is under Federal Rule 56, and that is whether the court appropriately resolved disputed questions of material fact. Let me get to the major substantive issue that was the source of 75% of the briefing in the summary judgment before the district court, and that's on the question of whether Ms. Davis had an obligation to prove the patentability of her invention, or whether she had the burden to prove that patents would issue, or whether she had the burden to prove exactly what claims would be contained in the patents. I think at various times all three of those arguments were raised. Ohio has a comprehensive system for dealing with legal malpractice claims. The leading Ohio case from the Ohio Supreme Court is the Gila v. Hall, which is cited in the papers. The Ohio statute, like most states, requires that there be the existence of an attorney-client relationship that creates a duty, that there be some negligent action which constitutes a breach of that duty, and that there be a causal connection between the malpractice of the lawyer and the consequent damages. Where Ohio law differs greatly from that of, I believe, the other 49 jurisdictions, and I'm not sure about the District of Columbia, is on the question of whether there is a case within a case that needs to be proved. I am not familiar with any other state that has held, as Ohio has, that proof of a case within a case is not necessary in every case. And the majority of the briefing that took place before the District Court is whether Ms. Davis, in this case, was required to prove a case within a case in order for her matter to be able to proceed to trial. But, you know, whether or not one has these specifics as to the abstract law, if in fact no damages could be proved, whatever you call it, that's significant, is it not? It is significant, Your Honor, and I would concede to you that if no damages could be proved, if no proximate causation could be established, then we would have no right to be in front of you asking for a remedy. But that's, again, not what happened here. Ms. Davis hired an expert, James O'Shaughnessy. He's a well-respected patent practitioner. Mr. O'Shaughnessy reviewed all of the materials that were given to the defendants before the filing of the patent applications. He reviewed the depositions that were taken in the case. He reviewed everything that was filed with the Patent and Trademark Office. He reviewed the PCT applications. He conducted an extensive interview of Ms. Davis. And after all of that, Mr. O'Shaughnessy wrote an opinion, which was filed with the court as part of the summary judgment proceedings. And in that affidavit, Mr. O'Shaughnessy said that but for the negligence of the defendants, Ms. Davis would have received patents on her invention. But was it before the trial court the peculiar circumstances under which this information, the material to be filed, was provided on very short notice? Yes, it was before the trial court, Your Honor. This was a well-briefed case. The depositions of all the players had been taken. It was a well-developed record, and the court well understood that Ms. Davis had gone to Mr. Thompson at the 11th hour. And it was well understood, I presume, by the court that Mr. Thompson could have said, Ms. Davis, thank you for coming in today, but I decline to do your work because you're putting me on a time crunch. I'm going to go on vacation. It's in the record that Ms. Davis had been to another law firm a month before, and that law firm had said to her, we're sorry, Ms. Davis, we don't have the time to devote to your project now. And likely that is what Mr. Thompson now wishes he had done, was to say to Ms. Davis, I'm sorry, I'm going on vacation. I just don't have the time to devote to this. I can't get involved. Had that happened, none of us would be here today. But that's not what happened. But the problem the lower court found wasn't with malpractice. I mean, the behavior by counsel in this case was clearly determined to be egregious. So I think the issue was, did Mr. O'Shaughnessy's naked statement of she could have gotten claims satisfy the burden of causation that the plaintiff has? So why don't you turn back to that, if you don't mind, and tell us why you think it does. And I'm disturbed by the description of this. I imagine so. Mr. O'Shaughnessy did all the things that I described earlier. He had seen all the deposition testimony. He had interviewed Ms. Davis. He had seen everything filed with the Patent and Trademark Office. He had seen the PCT application. Then why didn't he respond to the Patent and Trademark Office rejection of the utility applications that were filed? There were multiple rejections that were filed prior to his expert report. I looked them up on PAIR myself. Yeah, and during that period of time. And this was before his expert report was filed. He didn't address any of the reasons that the Patent Office rejected her application. The defendants are the ones who are responsible for the rejection of the patents. Because the claims were poorly drafted. Because the claims were abysmally drafted. But doesn't Mr. O'Shaughnessy have to establish that there was something for which she may have been able to secure patent protection? And he did that. How? What did he say? What was the thing for which she would have been able to secure patent protection? He gives a bullet point list in his expert report. And I believe pages 11 and 12. I'm on page 11. Well, maybe I'm on page 11 is the wrong thing. I'm on A11. Where did you mean me to go? It's in his expert report. He incorporates it by reference in his affidavit. Okay. Tell me what page is the appendix you'd like me to look at. Or what page of the brief. 1190 is where I have the beginning of the expert report. If that's helpful. It's on page 1200. The last two lines on 1200. And going over through page 1201. Is the bullet point list of. That Mr. O'Shaughnessy gave in his expert report. In which he indicates these were patentable. This was patentable subject matter for Ms. Davis' invention. He then incorporates that bullet point list by reference in the affidavit that he filed with the district court. And says, I renew my opinion that the bullet point list in my expert report. Describes the patentable subject matter of Ms. Davis' invention. That was all before the district court. And in my view the district court entirely disregarded it. Well, let's hear from the other side. And we'll save your full rebuttal. Thank you. Mr. King. May it please the court. This is the first time for this court where jurisdiction has been contested. It was never contested below. There was no motion to remand. The jurisdiction can be contested at any time. That's correct. Keep going. We believe the jurisdiction did properly lie under 28 U.S.C. 1338. Because Ms. Davis did allege specific claims and discreet legal malpractice claims that involve substantial questions of federal patent law. In response to the question that you asked Judge Moore, in the complaint, the original complaint simply alleged that the PCT applications were not filed in a timely manner. That the deadline was missed. Three months later, the complaint was amended to add just three words, and other omissions as the basis for the claims of malpractice. Those words had significance because a week later, a little over a week later, we had opposed the plaintiff and we asked the plaintiff, what are you claiming as the basis for the malpractice against the defendant attorneys? And she made it very clear that she believed one of the claims was negligence in connection with the prosecution of her domestic patents. It was the first time that was disclosed. And it was on that basis that the case was removed and proceeded in front of the district court in the Northern District of Ohio. Her complaint, arguably it wasn't well pleaded. It was only a page and a half complaint. But she did disclose in her deposition, the plaintiff disclosed in her deposition, that included these patent law questions tied to her malpractice claims. But there isn't just one single malpractice claim. There are at least three discrete causes of action for legal malpractice. Is that question, the question of how many claims there are, as Mr. Bell suggested in his argument, a question of state law or is that a question of federal law? I believe that it's a question of state law. If Ohio has a rule that says that notwithstanding the rule in 49 other states and the federal system, if you have any number of disparate claims against a single defendant, they all constitute one claim. Does that mean that for purposes of the Christensen analysis, they all become multiple theories in support of a claim? Because that seems to me the implication of saying that it's a state law question. Well, I mean, I think under Ohio law, these are separate claims. We saw Ohio case law. But do we have to decide that question of Ohio law or are we looking at this through the filter of federal law in applying the Christensen doctrine? Well, Christensen says you cannot avoid a federal law question through artful pleading. And to the extent that there is a discrete cause of action that this court could identify, whether under federal law or under state law, the causes of action rise under state law. But when you say a discrete cause of action, that again goes back to under whose standard? I mean, you say, well, you think it's true under either federal or Ohio law. But do we have to make a determination as to what Ohio would do with the three different theories or claims? I'll amend my answer. I don't think that's the case. The federal court has to decide its own jurisdiction. I think it's a federal question whether her causes of action are separate theories or discrete claims. I would agree with that. No matter how the state treats it. Correct, correct. But as I said, I don't think it really matters under Ohio law. I think it follows the same rules under federal law in terms of determining whether it's a discrete cause of action. But the various so-called theories that are advanced in the briefing papers are really nothing more than instances of further negligence to support, for example, the entire prosecution process. The three claims are the late filing of the PCTs in January of 2007. The second claim is an alleged failure to advise Ms. Davis in 2003, a period of time three and a half years prior, on the requirements of absolute novelty. You know, at the same time, instead of pointing out some of the weaknesses, I think we all have to agree that this was far from a perfect representation. And on that premise, isn't the question then whether in looking to see whether, in fact, there was monetary injury, is your view that we still look to Ohio law? On the elements of approximate cause and damages, yes. I think we are in the realm of Ohio law, that Ohio law would govern those issues. And the Ohio Supreme Court has made clear, and they made clear in August of 2008, that the case-within-a-case doctrine of legal malpractice applies depending upon the plaintiff's theory of recovery. It's not a novel proposition. It wasn't a groundbreaking ruling. There were previous decisions in Ohio that says it all depends on your theory of recovery. If your theory is not a but-for theory of recovery, you're not necessarily held to but-for causation. You just have to simply show that there's a causal connection between the defendant's alleged negligence and the injury you're claiming. For example, if a client claims malpractice because a settlement demand wasn't properly communicated, wasn't communicated to the client, and the client went to trial and ended up worse off, in that type of scenario, I believe under Ohio law, that the client, the plaintiff, would not be required to show that he or she would succeed in the underlying matter because that isn't the theory of recovery. That isn't the damages that they would be claiming. They're claiming the loss of a better settlement outcome. Here, though, Ms. Davis's theory is but-for causation. Their own expert couldn't have said it clear that but-for the defendant's alleged negligence, the plaintiff would have obtained patents for her inventions. We submit that that necessarily requires her, as part of her case in chief, to show that her inventions are patentable. Contrary to counsel's suggestion, we believe that Mr. O'Shaughnessy, the expert, did not undertake any patentability analysis. To quote his deposition testimony, which the district court below latched onto, he did not undertake a patentability analysis at all. He did not undertake a prior art search. He did not identify the claims that would be patentable. With respect to the PCTs, there was no identification of even any countries in which he would have obtained patents. His subsequent affidavits tried to concoct some patentability analysis, resurrection patentability analysis, that he says he did. You're saying that under Ohio law, it's irrelevant whether there was any negligence, even negligence so extreme as perhaps to constitute malpractice, if there were no monetary injury. That's correct. You still have to establish proximate cause and damages. These are separate elements. It's torts 101. Under the Environmental Network Decision from the Ohio Supreme Court, even the Vajilla Decision, you have to show proximate cause. That's part of your case. Okay, but now we've moved it to, at your instigation, we've moved it to the federal system, and we're invoking federal patent law, which may or may not be the same in terms of the responsibility of a practitioner registered to practice before the patent office. Do you feel that that doesn't count? I believe that insofar as the PTO rules of practice would guide a determination of whether there was a failure to adhere to the standard of care, that's a separate question from proximate cause and injury. Even if Mr. Thompson didn't adhere or didn't abide by the PTO's rules of practice, as part of the legal malpractice claim that Ms. Davis advances, she still has to show that that failure of the standard of care proximately caused the damages that she's seeking, and we submit that she has not. The lower court required, boy, an awful lot of things. On page A32 of the lower court decision, it indicates failure in Mr. O'Shaughnessy's declaration or affidavit or report, however you want to frame it, well, maybe it's not A32, which, let's see, I've lost my page here, but remember it, oh, there it is, A30. He chastised Mr. O'Shaughnessy for not searching the prior art. You know, when you file a patent application, you have no obligation to search the prior art, none whatsoever. Why in the world, in an instance of severe legal malpractice, egregious attorney misconduct, would we require for causation the establishment of searching for prior art far more detailed than we would have required for the filing of a patent application? To the extent Mr. O'Shaughnessy wants to offer an opinion that her inventions are patentable, he has to have a valid basis for that. He has to at least have some, we believe, undertake some prior art search. The problem is he didn't undertake any prior art search at all, nothing. But suppose I disagree with you. Suppose I don't believe that he's obligated to undertake a prior art search. Then the next question I would ask is, would you agree that Ms. Davis has to show that her inventions are patentable in order to show proximate cause and damages? And if the answer to that question is yes, Mr. O'Shaughnessy has not undertaken a patentability analysis because he admitted, I undertook no patentability analysis at all. Mr. O'Shaughnessy says he looked at all of these things. He listed bullet points of things on page 1200 and 1201 that he believed were part and parcel of the invention and could have been filed claims for. And he said, I think she would have gotten claims on all these things. He actually said those are features. He described them as features of her invention that could be used as a basis to develop a set of patentable claims. Those aren't the claims. He made it very clear that the bullet points that he listed in his expert report were not the patent claims. I guess my problem is I think the district court and you are arguing for way too high a standard of what your expectation is that Mr. O'Shaughnessy needed to do to establish this. Because you're arguing a standard that is far in excess of what is necessary for filing a patent application. I don't know. He has to detail potential claims? That's the level that we need to hold him to? Wouldn't it have been enough if he said, for example, and I realize you're going to tell me he didn't. But if he did, for example, say, well, there's a feature in her invention that no one has ever suggested is present in any prior art. It's this feature. And look at these horribly drafted claims. It doesn't even include, these claims don't include the most important feature of her alleged invention. Wouldn't that have been enough? It depends on what. And then wouldn't the burden switch back to you all to establish that no, that feature doesn't entitle her to a patent? Wouldn't that be a more logical way to do this since you all were the ones who were egregiously negligent? Wouldn't that be the logical way to set this up? She has the burden of coming forward and establishing that there's something important about her invention that hasn't been represented in the patent claims. And you all then have the obligation to show that that would not have separately entitled her to a patent? That seems to me the much more logical way to set up a case like this, burden shifting. But her theory of damages presumes issued patents. Her lost profits and lost investment opportunity and lost cash out opportunity depends on specific patent claims. That is what their experts said. Do you prosecute patents? No, I do not. Would it surprise you to know that most patentees can ultimately get a patent on things that they seek? It may not be the perfect patent. It may not be the broadest patent that they seek, but they can ultimately get something. We certainly don't know that here, though, because the patent applications were filed. The domestic patent applications were filed. The specification was held to be fine. And there were issues identified by the PTO, but they were never addressed. The patent applications were abandoned. Well, the reason is because they were horribly drafted, right? They were terribly prosecuted. I mean, now you want to hold her accountable for the egregious misbehavior of the attorneys that filed the applications and began the prosecution process? Well, there was no – I mean, it was the negligence that caused that. It caused her not to prosecute the patents. She could have still prosecuted those patent applications. It may not have been Mr. Thompson or Brouse McDowell, but she still could have done that. There was no – as I understand it, all of this work was done in one day, taking provisional applications that had been prepared by a non-lawyer, by the inventor. But for which payment was made in advance. And I gather that thereafter, although I gather from the record one claim was added, there was no further attempt to improve upon the applications, having done it all in one day, for which the inventor contributed, certainly, with a very short notice that was provided. But nothing happened thereafter either to remedy what must have been seriously flawed applications, for which the attorney had been paid in advance. There was always the intent to come in later and try to amend the patent applications. But that didn't happen, I gather. It did not happen because the relationship severed. Well, that took several months before the severance, from what I see in the record. This was not something that was done immediately upon the return from vacation, whatever it was that intervened. There were communications that that was going to be done, it just didn't happen. It didn't happen because the relationship severed. The fees were not returned, I gather. That's correct. I see my time is up. Any more questions? Any more questions? Okay, thank you, Mr. King. Mr. Bell? Thank you, Your Honor. As to the question of burden proof patentability, I direct the Court's attention to page 1379 of the appendix, which is an excerpt from the Browse McDowell website, advertising material that Browse McDowell had up at the time Ms. Davis went to Browse McDowell for the preparation of the U.S. and PCT patent applications. The language on the Browse McDowell website says, Our attorneys handle all aspects of patenting inventions. A patent availability search and opinion is conducted first to determine if an invention is patentable. How can that be done if you are presented with the request to file these patent applications by midnight? There isn't time for a search or whatever else. It looks as if there was more than one side that led to these unfortunate events. And, Your Honor, as I said earlier, I agree with that completely, that Ms. Davis brought the patent applications to Mr. Thompson at a less than ideal time. However, it is always the attorney's obligation, if the attorney feels that the attorney cannot zealously represent the interests of the client, to decline the representation. Mr. Thompson was very happy to negotiate a check for $15,000 that was given to him by Ms. Davis, and Mr. Thompson never refunded one penny of that $15,000, despite the evidence that there was a two-part strategy that was going to be employed, a quick filing was going to be done to preserve the priority date, and then at some point later Mr. Thompson was going to go back and amend and supplement the patent applications. That's what the $15,000 was for. Did you file, as part of the legal malpractice claim, a separate claim seeking a refund of the monies paid since no adequate performance was given? And I wanted to get to that point as well, Your Honor, so I'll address it now. Under Ohio law, all of those claims are merged into one claim for malpractice. So if you filed a breach contract claim against Mr. Thompson because he didn't do what he said he would do, if you filed an unjust enrichment claim against Mr. Thompson because he kept money for work that he didn't perform, those under Ohio law are all merged into a single cause of action for legal malpractice. But in your argument in chief here, I think you said that if, in fact, the damages based on lost profits and lost business were not available and proved under Ohio law, that that was what your case was. Well, that's a part of what the case is, but the case is also about the $15,000, and despite the fact that the district court granted summary judgment saying there was no entitlement to damages, the district court never addressed in any regard Ms. Davis' entitlement to a refund of the $15,000. Was that requested? Absolutely. Specifically? Well, it's not specifically requested, but it doesn't need to be specifically requested. Her addendum clause says she sought damages in excess of $25,000. Under the Ohio pleading rules, that's all that's required. Her pleading was well drafted and met the requirements of the Ohio rules of civil procedure. For all the reasons that we've stated, we would ask the court to either remand the case to the district court with instructions that it be sent back to the state court, or if this court finds that there is federal jurisdiction, to vacate the grant of summary judgment and send the case back to the district court for trial. Thank you very much. Thank you. Mr. Barrow, Mr. King, the case is taken under submission. All rise.